IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH COFFEY and DANIEL KORCZYK, individually, and on behalf of all others similarly situated, | ) ) ) ) ) Case No. 1:23-cv-02175 <br> Judge John F. Kness |
| Plaintiffs, | ) ) Magistrate Judge Heather K. McShain |
| KERRISDALE CAPITAL MANAGEMENT, LLC, and SAHM ADRANGI, | ) **PLAINTIFFS DEMAND** ) **TRIAL BY JURY** ) |
| Defendants. | |

## SECOND AMENDED SECURITIES CLASS ACTION COMPLAINT

Plaintiffs, ELIZABETH COFFEY and DANIEL KORCZYK, individually, and on behalf of all others similarly situated, by and through their undersigned attorney, based upon personal knowledge and on information and belief derived from the investigation of counsel, and a review of public documents as to all other matters, complain against Defendants, KERRISDALE CAPITAL MANAGEMENT, LLC and SAHM ADRANGI, as follows:

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that sold shares of C3.ai, Inc., with the trading symbol "AI," between April 4, 2023, and April 6, 2023, inclusive, for a loss (the "Class Period"). Plaintiffs pursue claims against Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. This case involves a violation of the Exchange Act, Rule 10b-5(a) & (c) and Section 9(b) (2) & (4), as amended, by Defendants, Kerrisdale and Adrangi, "activist" short-sellers of common stock in the publicly-listed

and traded C3.ai, Inc., a technology company, when they issued a written letter, prior to the opening of the stock markets, beginning on or about 8:05 a.m. ET April 4, 2023, which was widely disseminated to the public via Kerrisdale and Adrangi by Twitter, with a link to the April 4, 2023 Letter, and available to the public on Kerrisdale's website and referenced and discussed later that day on Adrangi's public appearance on CNBC's television show known as the "Closing Bell."

3.   The April 4, 2023 Letter contained knowingly false and deceptive derogatory statements made by Defendants about, *inter alia*, the accounting practices of C3.ai, Inc. for the purpose of manipulating and artificially driving down the price of the common stock in C3.ai, Inc. temporarily, in order for Kerrisdale and Adrangi to "cover the short" and generate substantial profits for themselves, their investors and affiliates. (the "April 4, 2023 Letter" or "letter").

4.   The April 4, 2023 Letter authored by Kerrisdale and Adrangi, an "activist" short-seller of shares of stock in C3.ai, Inc., accused C3.ai, Inc. of, *inter alia*, knowingly creating financial statements that contain "deceitful accounting," "[using] fraudulent accounting conventions," "to fool market participants by painting a false portrait of the company's profit and loss," "trying to cover up a failing business," "investors are being conned," "hiding costs," "booking fictional revenue," and making "a mockery of …the SEC's reporting requirements." The April 4, 2023 Letter also accused Deloitte & Touche LLP, one of the nation's leading auditing, accounting and consulting firms, and C3.ai, Inc.'s auditor, of,

*inter alia*, "rubber stamping fraudulent accounting," directed Deloitte & Touche LLP "to come clean in its upcoming audit or resign" and essentially accused Deloitte & Touche LLP of colluding with C3.ai., Inc., to deceive the investing public.

5. The April 4, 2023 Letter had the effect specifically intended by Kerrisdale and Adrangi on the day of its release to the public as well as the following days (April 5 & 6, 2023), of driving down the price of the common shares of stock in C3.ai, Inc. by over one-quarter (1/4) of their value, resulting in a loss to its market capitalization of C3.ai, Inc. in an amount in excess of one-billion dollars ($1,000,000,000), and, at the same time, causing Kerrisdale and Adrangi to reap substantial profits from Kerrisdale's short positions on their C3ai, Inc. common stock.

6. The public actions and claims of Defendants led to an exceedingly rapid decline in the market value and price of C3.ai, Inc. common stock because of the great concern that these claims caused to shareholders. A natural reaction to these events, as exhibited by Plaintiffs, would have been to sell their holdings in anticipation that losses might deepen. Plaintiffs realized that Defendants' accusations, if later proven true, may have had a long-lasting negative effect on the share value of C3.ai, Inc. In the April 3, 2023, to April 6, 2023 timeframe, shareholders of C3.ai, Inc. stock could not have known that Defendants' claims would later be judged by the financial markets to be false, thereby resulting in a rebound of the price of C3.ai, Inc.'s stock, and even an increase in the value of the stock

7.  A graph showing the rapid loss in the market capital of C3.ai, Inc. during the Class Period, as well as the stock's more current performance, is shown below:



8.  By letter dated April 5, 2023, C3.ai, Inc. responded to the accusations made by Kerrisdale and Adrangi in the April 4, 2023 Letter and stated that they were false. Management's denial, while perhaps somewhat encouraging to existing shareholders, would not immediately put the issue to rest, particularly since shareholders had significant amounts of money at stake.

9.  On April 6, 2023, C3.ai, Inc., through its Chief Executive Officer Thomas M. Siebel, responded in an interview to the April 4, 2023 Letter describing why the factual accusations made by Kerrisdale and Adrangi were false. Thomas M. Siebel also commented that the April 4, 2023 Letter contained "not a word of truth" and "I mean the guy [Adrangi] succeeded, sometimes crime pays."

10.     On May 15, 2023, C3.ai, Inc. released the following statement coinciding nearly immediately with the sharp rebound in the share value of C3.ai, Inc.:



11.     C3.ai, Inc. is, in fact, a viable, legitimate business, with significant revenue and growth. Just recently, on April 24, 2023, C3.ai, Inc. announced a contract with the United States Air Force to use the C3.ai, Inc. software platform to run the "PANDA" operating system. "PANDA" is extendable to all of the Air Force's material categories, including aircraft systems, missile systems, support equipment and vehicles, facilities and infrastructure, and commodities.

12.     The claims asserted herein arise under, *inter alia*, Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78(b) and 78t(a)), Rule 10b-5

promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5), as well Section 9(b).

**PARTIES AND OTHERS**

13.  Plaintiff, Elizabeth Coffey ("Coffey"), is an individual and citizen of the State of Illinois, residing at 1904 Green Bay Road, Unit J, Highland Park, Illinois 60035.

14.  Plaintiff, Daniel Korczyk ("Korczyk"), is an individual and citizen of the State of Georgia, residing at 9260 Colham Drive, Cumming, Georgia 30041.

15.  Defendant, Kerrisdale Capital Management, LLC ("Kerrisdale"), is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 1000 5th Street, Suite 401, Miami Beach, Florida 33139. Kerrisdale is a short-seller of stock including common shares in C3.ai, Inc. Kerrisdale manages a hedge fund with millions of dollars on deposit from investors located throughout the United States, likely including investors in this Judicial District. Kerrisdale maintains a website open, only in part, to the public located at www.kerrisdale.com. Kerrisdale is referred to in the industry, and refers to itself, as an "activist" short seller of shares of common stock. Kerrisdale and Adrangi's routine practice is to target a particular company and recommend, through their public criticism of the target, that the investing public take a "bear" position with respect to the same. This strategy, if successful, may, depending upon the truthfulness or the lack thereof of the criticism by Kerrisdale, result in the

6

unlawful manipulation of the market and allow Kerrisdale to reap huge profits at the expense of the investing public and the integrity of the markets as well as the target itself.

16. Defendant, Sahm Adrangi ("Adrangi"), is an individual and citizen of the State of Florida residing in or around Miami Beach, Florida. Adrangi is a founder and the Chief Investment Officer of Kerrisdale and is the author of the April 4, 2023 Letter. Adrangi is also the chief "activist" at Kerrisdale responsible for yielding profits for Kerrisdale and its hedge fund from its short positions.

17. C3.ai, Inc. is a corporation organized and existing under the laws of the State of California based in Redwood, California, located at 1400 Seaport Boulevard. C3.ai, Inc. is a leading Enterprise AI (artificial intelligence) software provider for accelerating digital transformation. Shares of the common stock of C3.ai, Inc. are traded on the New York Stock Exchange under the symbol "AI."

18. Deloitte & Touche LLP is a limited liability partnership with offices located throughout the United States and is in the business of providing auditing, accounting and consulting services. Deloitte & Touche LLP currently provides auditing services to C3.ai, Inc. Deloitte & Touche LLP is one of the most respected auditing firms in the world.

**JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and the Exchange Act Section 27; 15 U.S.C § 78aa.

20. This Court has personal jurisdiction over Kerrisdale and Adrangi because, at all relevant times, they have been regularly conducting business in the State of Illinois. The April 4, 2023 Letter at issue, as well as the public Twitter feed of Kerrisdale and Adrangi, with a link to the April 4, 2023 Letter, and appearance by Adrangi of Kerrisdale on the national and international channel CNBC TV on April 4, 2023, was transmitted to, shown to, and viewed by, individuals and entities located in this state and this Judicial District. The April 4, 2023 Letter as well as the other unlawful actions of Kerrisdale and Adrangi, as alleged herein, caused the massive sale of stock holdings in C3.ai, Inc., and Defendants thereby achieved the result they intended causing an artificial panic in the stock markets and resulting losses to Plaintiffs and the Class during the Class Period.

21. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). As reflected above in Paragraph 20 of the Second Amended Securities Class Action Complaint, substantial acts in furtherance of the alleged fraud and/or the effects of the fraud have occurred in this Judicial District. Many of the acts set forth herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, Kerrisdale operates a hedge fund that, upon

information and belief, has investors likely located throughout the United States, including within this Judicial District to whom benefitted from the unlawful conduct of Defendants set forth herein.

22.  In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone, internet and televised communications, and the facilities of a national securities exchange, namely the New York Stock Exchange where AI trades.

## FACTS SPECIFIC TO PLAINTIFFS

### Coffey

23.  On or about March 6, 2023, Coffey purchased 5.33426 shares of the common stock of C3.ai, Inc. through her SoFi brokerage account at a purchase price of approximately $28.12 per share for a total of $150.00.

24.  After the release to the public of the April 4, 2023 Letter by Kerrisdale and Adrangi on its public Twitter account and its website and otherwise, on April 5, 2023, Coffey sold her 5.33426 shares in C3.ai, Inc. through her SoFi brokerage account at a sale price of approximately $23.56 per share, or a total of $125.70, for a loss of $24.30. Coffey sold her shares in C3.ai, Inc. in this Judicial District.

25.  The decline in the share price of common stock in C3.ai, Inc. purchased by Coffey on or about March 6, 2023, was directly attributable to the contents of the April 4, 2023 Letter, Kerrisdale's public Twitter feed with a link to the April 4, 2023 Letter and Adrangi's

appearance on CNBC TV that same day, which was made public by Kerrisdale and Adrangi for the purpose of unlawfully manipulating the trading of stock in C3.ai, Inc. in the stock markets.

**Korczyk**

26.     On or about April 3, 2023, Korczyk purchased 3000 shares of the common stock of C3.ai, Inc. through his brokerage account at a purchase price of approximately $33.68 per share for a total of $101,040.

27.     After the release to the public of the April 4, 2023 Letter by Kerrisdale and Adrangi on its public Twitter account, its website and otherwise, on April 6, 2023, Korczyk sold his shares in C3.ai, Inc. through his brokerage account at a sale price of approximately $24.03 per share, or a total of $ 72,090, for a loss of $28,950.

28.     Shareholders such as Korczyk were forced to wait to sell shares that had only been purchased a short time earlier.  Financial markets require a minimum holding period during which purchased shares are transferred and recorded.  For most stock trades, settlement occurs two business days after the day the order executes.

29.     The decline in the share price of common stock in C3.ai, Inc. purchased by Korczyk on or about April 3, 2023, was directly attributable to the contents of the April 4, 2023 Letter, Kerrisdale's public Twitter feed with a link to the April 4, 2023 Letter and Adrangi's appearance on CNBC TV that same day, which was made public by

Kerrisdale and Adrangi for the purpose of unlawfully manipulating the trading of stock in C3.ai, Inc. in the stock markets.

**ALLEGATIONS COMMON TO ALL COUNTS**

30.    By March 6, 2023, Kerrisdale and Adrangi had decided jointly to make C3.ai, Inc. a "target" of its short positions and furthermore to take steps to drive the market price of the stock (AI) down so that they could reap a large profit for themselves, their hedge fund and their investors.

31.    As a part and parcel of their scheme to profit from their significant short positions in C3.ai, Inc., Kerrisdale and Adrangi purchased, or had purchased, thousands of contracts or positions that shorted the securities of C3.ai, Inc. These short contracts or positions would become profitable only upon a significant decline in the value of the securities in C3.ai, Inc.

32.    By April 3, 2023, Kerrisdale and Adrangi had determined to engage in an unlawful practice and scheme with respect to C3.ai, Inc. known in the industry as a "Short-and-Distort Attack" and a "Poop and Scoop." Both of these practices are used to describe an illegal market manipulation scheme that involves shorting a stock and then spreading (or publishing) negative false information about the target company in an attempt to drive down its price so that the culprit or culprits can cover their short positions at a significantly reduced price when the negative information drives down the price of the stock. These practices are the inverse of the well-known, but also illegal practice, of "Pump and Dump."

33. Beginning on or before 8:05 a.m. ET, April 4, 2023, before the stock markets opened, Kerrisdale, through its founder and Chief Investment Officer, Adrangi, made public via Twitter, an appearance on CNBC TV, its website and otherwise a letter addressed to Deloitte & Touche LLP, C3.ai, Inc., the Securities & Exchange Commission and the Audit Committee of C3.ai wherein Kerrisdale and Adrangi claimed that the publicly-listed and traded technology company known as C3.ai., Inc. (NYSE: AI) had conspired, and would, if not stopped, conspire in the future, with Deloitte & Touche LLP, its auditor, to create and disseminate to the public false and deceptive financial statements that failed to show that C3.ai, Inc., as a going concern, was essentially worthless.

34. Kerrisdale's public Twitter tweets referenced herein were viewed by upwards of approximately 500,000 people located likely all over the United States including likely in this Judicial District beginning at 8:05 a.m. ET on April 4, 2023, and continuing throughout the day.

35. The Kerrisdale and Adrangi public Twitter feed on April 4, 2023, at 8:05 a.m. ET, began as follows: We sent a letter to http://C3.ai's auditor Deloitte, the audit committee & SEC documenting serious accounting issues: http://kerr.co/ai-audit. Deloitte prepares audit opinion next month for FY 4/30. $AI's fictional accounting has no place in the public markets. 8:05 a.m., 369,000 views

36. The Twitter feed sent to the public on April 4, 2023, at 8:05 a.m. ET, and made available to investors throughout the United States, including

those residing in this Judicial District, before the markets opened, included a link to the April 4, 2023 Letter written by Adrangi located on Kerrisdale's website.

37. The April 4, 2023 Letter, referenced in the above Twitter feed, began by stating "[p]lease examine the contents of this letter as you engage in your review, to ensure that the company cannot use fraudulent accounting conventions to mislead investors and damage the integrity of the public markets."

38. The Kerrisdale website is generally private and only available to its investors but, in this case, the April 4, 2023 Letter was made easily available to the public by Adrangi and Kerrisdale.

39. Information on the Kerrisdale website states that the information in the April 4, 2023 Letter is believed by Kerrisdale and Adrangi to be factually true and correct. More specifically, the Kerrisdale website states as follows: "Kerrisdale has obtained all information herein from sources they believe to be accurate and reliable."

40. More specifically, the April 4, 2023 Letter accused C3.ai, Inc. of, *inter alia*, knowingly creating financial statements that contain "deceitful accounting," "[using] fraudulent accounting conventions," "[trying] to fool market participants by painting a false portrait of the company's profit and loss," "trying to cover up a failing business," "investors are being conned," "hiding costs," "booking fictional revenue," "and making a mockery of ... the SEC's reporting requirements."

41.  The April 4, 2023 Letter further accused Deloitte & Touche LLP, C3.ai, Inc.'s auditor of, *inter alia*, "rubber stamping fraudulent accounting" and turning its head the other way. The April 4, 2023 Letter recommended that Deloitte & Touche LLP "come clean in its upcoming audit or resign." (A copy of the April 4, 2023 Letter is attached hereto as Exhibit "A" and made a part hereof).

42.  More specifically, the April 4, 2023 Letter concludes that "Deloitte doesn't need to rubber stamp fraudulent accounting. Either require the company to come clean in its upcoming audit or resign and let C3.ai management sully the reputation of a lesser audit firm."

43.  The April 4, 2023 Letter was widely disseminated publicly by Kerrisdale and Adrangi through Kerrisdale's Twitter feed with a link to Kerrisdale's website where the April 4, 2023 Letter was placed and to the public as alleged herein before the stock markets opened on April 4, 2023.

44.  On April 4, 2023, Adrangi appeared on CNBC TV's the "Closing Bell: Overtime" to discuss the contents of the April 4, 2023 Letter. Adrangi later that same day tweeted publicly about his appearance on the "Closing Bell: Overtime;" a tweet that was viewed by at least 39,700 individuals and is shown below:



45. As of April 4, 2023, CNBC TV's show the "Closing Bell: Overtime" had an audience of approximately 209,000 viewers (average viewership). "https://ustvdob.com networks cnbc shows closing bell." CNBC TV is the recognized world leader in business news and provides real-time financial market coverage and business content consumed by more than 355 million people per month across all platforms.

46. The video of Adrangi's appearance on CNBC TV is still available for viewing at https://www.cnbc.com (video 2023/04/04 Kerrisdale).

47. DTTW, "Day Trade The World," a live show on YouTubeLive with 46,900 subscribers, at 2:07 ET on April 4, 2023, via trader Neal Roberts, reported publicly a loss for the day of 23.51 percent for the stock of C3.ai, Inc. and titled the segment **"Kerrisdale Capital Pens Crushing Letter! Aggressive Accounting."** The video of the show can be found at http://watchlisttradertv.live/.

48.   On April 4, 2023, at 4:15 p.m. ET, Investors' Business Daily ran a public video segment entitled "**C3.ai Plunges 26% On Kerrisdale Capital Letter To Auditor.**" This video is available for viewing at http://www.investors.com news technology ai-st.

49.   All of the derogatory news disseminated to the public on April 4, 2023, April 5, 2023, and April 6, 2023, regarding C3.ai, Inc. was the result of the actions of Kerrisdale and Adrangi, as alleged herein, and the contents of the April 4, 2023 Letter.

50.   As a direct result of the conduct of Adrangi and Kerrisdale as alleged herein as well as the dissemination of the April 4, 2023 Letter by Kerrisdale and Adrangi, beginning at the opening of the NYSE on April 4, 2023, the common stock price of C3.ai, Inc. dropped by almost thirty-six percent (36%), from $34.50 per share on April 3, 2023, to $22.00 (at the close of the market on April 4, 2023) and lost a market capitalization in one (1) day on April 4, 2023, in the amount of approximately one-billion dollars ($1,000,000,000).

51.   After the extensive republication of the April 4, 2023 Letter on April 5, 2023, on *Seeking Alpha* and other public media websites, as well as being highlighted in multiple news broadcasts on CNBC TV that morning referencing the letter, the price of C3.ai, Inc. shares declined by an additional 15.47% before the formal close of the markets on April 5, 2023, and fell another 1.33% after hours, representing an additional loss of market capitalization of a total of approximately $421,000,000.

52. On April 6, 2023, the stock in C3.ai, Inc. continued to trade well below its closing price on April 3, 2023, before the false and derogatory information was released by Kerrisdale and Adrangi to the public as alleged herein.

53. The fallout to the price of the C3.ai, Inc. stock referenced above was attributable solely to the April 4, 2023 Letter and the other wrongful conduct of Adrangi and Kerrisdale as alleged herein.

54. After the close of the markets on April 4, 2023, C3.ai, Inc. formally responded by letter dated April 5, 2023, to the publications of Defendants. In that response, C3.ai, Inc. rejected the false factual statements made by Kerrisdale and Adrangi in the April 4, 2023 Letter.

55. As a result thereof, the stock AI eventually, over a period of months, reclaimed all of its market cap lost as a direct result of the April 4, 2023 Letter and other wrongful conduct of Adrangi and Kerrisdale as alleged herein and is currently trading at approximately $46 per share, well above its price at the time of the dissemination of the false factual information by Adrangi and Kerrisdale as set forth herein.

56. This Class Action Lawsuit seeks to compensate those investors who, during the Class Period, sold their shares of C3.ai, Inc. during the period April 4, 2023, through April 6, 2023, inclusive, and sustained a loss as a result of the difference between the price of the stock at the close of the markets on April 3, 2023, and the sale price of the stock at the time of the sale of their shares in C3.ai, Inc. on or before the close of the markets on April 6, 2023.

57. The Class is composed only of individuals and entities who owned shares of C3.ai, Inc. at the close of the markets on April 3, 2023.

58. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

59. During the Class Period, Plaintiffs and the Class sold securities in C3.ai, Inc. at artificially low prices and were damaged thereby. The price of C3.ai, Inc.'s securities significantly declined when the misrepresentations were made to the market by Adrangi and Kerrisdale as alleged herein.

60. As alleged herein, Defendants acted with scienter since Defendants knew that the April 4, 2023 Letter and related public statements issued and disseminated to the markets were materially false and misleading and they actively participated in the public dissemination of the same with the specific intent that they, as activist short sellers of securities in C3.ai, Inc., would benefit from the temporary artificial drop in the market price of the stock. In addition, as set forth herein, information was publicly available to Kerrisdale and Adrangi that clearly showed that the conduct complained of by Defendants was in accordance with GAAP and the applicable accounting conventions for the recordation of revenue and receivables and the public reporting of the same.

**CLASS ACTION ALLEGATIONS**

61.     Pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and the following Multi-State Class: Any person who has sold a share or shares of the common stock of C3.ai, Inc. residing in the fifty (50) states, and the District of Columbia, on or after April 4, 2023, and on or before the close of the markets on April 6, 2023 (the "relevant period"); buyers of call options on C3.ai, Inc. who were long the call option as of April 4, 2023, and who sustained losses during that three (3) day period through April 6, 2023, and sold their positions on or before the close of the market on April 6, 2023; and sellers of put options on C3.ai, Inc. who were short the put position as of April 4, 2023, and who sustained losses during that three (3) day period through April 6, 2023, and sold their positions on or before the close of the markets on April 6, 2023.

62.     Excluded from the Class are Kerrisdale, Adrangi and Kerrisdale's officers, directors, legal representatives, successors, subsidiaries, and their assigns and any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court who may hear an appeal of any judgment entered.

63.     Certification of Plaintiffs' claims for Class-Wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a Class-Wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

64. This action has been brought and may be properly maintained on behalf of the Multi-State Class proposed hereunder under FRCP 23, and satisfies its numerosity, commonality, typicality, adequacy and predominance, and superiority requirements.

65. Plaintiffs reserve the right to amend the Multi-State Class definitions based upon information learned through discovery.

## Numerosity - FRCP 23(a)(1)

66. Consistent with FRCP 23(a)(1), the members of the Class are so numerous and geographically dispersed that joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, there are believed to be thousands of investors in the common stock of C3.ai, Inc. who were negatively impacted financially by the April 4, 2023 Letter and its false contents during the relevant period, and who sold their shares at a loss on or before the close of the markets on April 6, 2023.

## Commonality and Predominance - FRCP 23(a)(2) and (b)(3)

67. This action involves common questions of law and fact that predominate over any questions affecting individual Class members. Common questions include, but are not limited to:

a. Whether Kerrisdale and/or Adrangi engaged in the conduct alleged herein;

b. Whether Kerrisdale and/or Adrangi engaged in the conduct alleged herein for the purpose of manipulating the share price of C3.ai, Inc.;

c. Whether Kerrisdale and/or Adrangi engaged in the conduct alleged herein for the purpose of profiting from their manipulation of the share price of C3.ai, Inc.;

d. Whether the conduct engaged in by Kerrisdale and/or Adrangi was violative of the Exchange Act, Rule 10b-5(a), 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5);

e. Whether the conduct engaged in by Kerrisdale and/or Adrangi was violative of the Exchange Act, Rule 10b-5(c), 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5); and

f. Whether the conduct engaged in by Kerrisdale and/or Adrangi was violative of the Exchange Act, Section 9(b) (2) & (4), 15 U.S.C. § 78i.

## Typicality - FRCP 23(a)(3)

68. Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and the Class members were subjected to the same alleged unlawful conduct and damaged in the same way, *i.e.*, they all sold shares of stock in C3.ai, Inc. after the false and deceptive reporting of Kerrisdale and Adrangi in the April 4, 2023 Letter as alleged herein.

## Adequacy - FRCP 23(a)(4)

69. Consistent with FRCP 23(a)(4), Plaintiffs, and their counsel, will fairly and adequately represent the Class and have the best interests of the members of the Class in mind. Plaintiffs and their counsel are not aware of any conflicts of interest with the Class. Plaintiffs' counsel is also competent and experienced in litigating federal and state court class actions, including handling securities litigation matters. Plaintiffs and their

counsel intend to vigorously prosecute this case in the best interest of the Class.

**Superiority - FRCP 23(b)(3)**

70.    A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the Class is impracticable. Many Class members are, or may be, without the financial resources necessary to pursue this matter, and even if some could afford to litigate claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed.

71.    Individual litigation also increases the time and expense of resolving a common dispute concerning Kerrisdale's and Adrangi's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

72.    The Class may be certified pursuant to FRCP 23(b)(2) because, *inter alia*, Kerrisdale and Adrangi acted on grounds generally applicable to the Class, thereby making final compensatory relief appropriate with respect to the claims raised by the Class.

73.    The Class may also be certified pursuant to FRCP 23(b)(3) because questions of law and fact common to members of the Class will predominate over questions affecting individual members, and a class

action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Class Action Complaint.

**FIRST CLAIM**
**(Violation of the Exchange Act of 1934,**
**Rule 10b-5(a), 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5),**

74.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 73 of the Second Amended Securities Class Action Complaint as Paragraphs 1 through 73 of Count I of the Second Amended Securities Class Action Complaint as though actually set forth herein.

75.    Rule 10b-5(a) prohibits the use of a fraudulent "device, scheme or artifice."

76.    As alleged herein, both Kerrisdale and Adrangi engaged in conduct intended to manipulate unlawfully the share price of C3.ai, Inc. when they authored and widely disseminated the April 4, 2023 Letter to the public before the market opened on April 4, 2023, through its public Twitter feed with a link to the April 4, 2023 Letter and the Kerrisdale website and later in the same day on Adrangi's appearance on CNBC TV's "Closing Bell" where the letter was discussed by Adrangi.

77.    The statements made in the April 4, 2023 Letter claiming that Deloitte & Touche LLP was "rubber stamping" C3.ai, Inc's "fraudulent accounting" or looking the other way and/or the purported collusion between C3.ai, Inc. and Deloitte & Touche LLP were false when made and Kerrisdale and Adrangi knew that the allegations of the same and the purported collusion were false at the time they were made publicly.

78.   In the April 4, 2023 Letter, neither Kerrisdale nor Adrangi set forth any evidence of Deloitte & Touche LLP "rubber stamping" of C3.ai, Inc.'s "fraudulent accounting" nor any actual collusion between the national public accounting, auditing and consulting firm Deloitte & Touche LLP and C3.ai, Inc., nor could they have done so as the allegations were categorically false and Kerrisdale and Adrangi knew that these statements were categorically false when they made them.

79.   The statements made in the April 4, 2023 Letter regarding the purported fraudulent nature of the financial statements and reporting of, *inter alia*, the subscription revenue and unbilled receivables of C3.ai, Inc. reflected above in Paragraph 40 of the Second Amended Securities Class Action Complaint were false when made and Kerrisdale and Adrangi knew that the allegations regarding the same were false at the time they were made publicly.

80.   Indeed, the "accounting conventions" used with respect to subscription revenue, and the resulting "unbilled receivables," as reported by C3.ai, Inc. on its financial statements were in accordance with Generally Accepted Accounting Principles, known as "GAAP."

81.   More specifically, the manner in which revenue was being recorded, and the unbilled receivables reported, by C3.ai, Inc., as reflected on its financial statements, was entirely consistent with ASC 606, as follows:

> The core principle of Topic 606 is that an entity should recognize revenue to depict the transfer of goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled
> in exchange for those goods or services.

**FASB ASC 606-10-05-3 through 05-4 and 606-10-10-2 through 10-4**

82. This is a straightforward accounting matter that had been fully disclosed by C3.ai, Inc. to the public, Deloitte & Touche LLP, the analysts and investors years before. See, e. g. C3.ai, Inc. Form S, Registration Statement Under The Securities Act Of 1933, at p. 67, entitled "Revenue." Both Kerrisdale and Adrangi had full, complete and easy access to this and other relevant information showing the accuracy of C3.ai, Inc.'s financial reporting and compliance with applicable accounting conventions.

83. Despite that access and knowing full well that C3.ai, Inc. was reporting in complete compliance with the applicable accounting conventions regarding the same, Kerrisdale and Adrangi knowingly and intentionally made false representations of fact as set forth in the April 4, 2023 Letter regarding the same.

84. Moreover, the manner in which C3.ai, Inc. was reporting its subscription revenue and unbilled receivables on its financial statements was consistent with the manner in which other publicly-traded companies operating in the same or similar areas including, but not limited to, Alteryx, Datadog, SAP, Adobe and Salesforce, were recording similar revenue and receivables on their financial statements.

85. The false and deceptive statements reflected in the April 4, 2023 Letter in Paragraph 40 above of the Second Amended Securities Class Action Complaint were made by Kerrisdale and Adrangi for the purpose of unlawfully manipulating the stock markets and committing a fraud on the markets, in order that they might reap the profits of an artificially-

created investor panic from the short positions that Kerrisdale held in the common shares of C3.ai, Inc.

86. Kerrisdale and Adrangi acted in a fashion, as alleged herein, that was designed to negatively affect the price of the shares of C3.ai, Inc. by artificially disrupting and manipulating market conditions for their financial benefit that do not reflect genuine investor supply and demand.

87. The conduct of Kerrisdale and Adrangi as alleged herein had the effect that Kerrisdale and Adrangi intended as it wrongfully drove down the price of the shares of C3.ai, Inc., causing Kerrisdale to profit substantially from its large short positions in the stock.

88. Prior to selling their shares of C3.ai, Inc., Plaintiffs were aware of the accusations made in the April 4, 2023 Letter and they relied upon the same as well as the rapid decline in the market price of the C3.ai, Inc. shares to sell their shares in C3.ai, Inc. at a loss.

89. A person of ordinary intelligence would have believed the factual accusations made by Kerrisdale and Adrangi in the April 4, 2023 Letter.

90. As a direct and proximate result of the fraudulent device, scheme and artifice, in this instance the April 4, 2023 Letter, Plaintiffs and the Class suffered damages equal to, among other measures, the drop in the share price of the common stock of C3.ai, Inc. and the corresponding losses on the sale of the stock they sustained therefrom during the Class Period.

**SECOND CLAIM**
**(Violation of the Exchange Act of 1934,**

**Rule 10-b(5)(c); 15 U.S.C. § 78j(c); 17 C.F.R. § 240.10b-5)**

91. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 73 of the Second Amended Securities Class Action Complaint as Paragraphs 1 through 73 of Count II of the Second Amended Securities Class Action Complaint as though actually set forth herein.

92. Rule 10b-5(c) prohibits engagement in an "act, practice, or course of business" that operates a fraud and deceit.

93. As alleged herein, both Kerrisdale and Adrangi engaged in an act, practice, or course of business intended to manipulate unlawfully the share price of C3.ai, Inc. when they authored and disseminated the April 4, 2023 Letter to the public before the markets opened on April 4, 2023, through its public Twitter feed with a link to the April 4, 2023 Letter and the Kerrisdale website and later in the same day on Adrangi's appearance on CNBC TV's Closing Bell where he discussed the letter.

94. In the April 4, 2023 Letter, neither Kerrisdale nor Adrangi set forth any evidence of actual collusion between the national public accounting, auditing and consulting firm Deloitte & Touche LLP and C3.ai, Inc., nor could they have done so as the allegations were categorically false and Kerrisdale and Adrangi knew that these statements were categorically false when they made them.

95. The statements made in the April 4, 2023 Letter regarding the purported "rubber stamping" of "fraudulent accounting" by C3.ai, Inc. on the part of Deloitte & Touche LLP, and looking the other way, with respect to the financial statements of C3.ai, Inc. and the collusion between C3.ai, Inc.

and Deloitte & Touche LLP were categorically false when made and Kerrisdale and Adrangi knew that the allegations of collusion were categorically false at the time they were made publicly.

96. The statements made in the April 4, 2023 Letter regarding the purported fraudulent nature of the financial statements and reporting of C3.ai, Inc. of, *inter alia*, the subscription revenue and unbilled receivables of C3.ai, Inc. reflected in Paragraph 40 of the Second Amended Securities Class Action Complaint, were false when made and Kerrisdale and Adrangi knew that the allegations of the same were false at the time they were made publicly.

97. Indeed, the "accounting conventions" used with respect to subscription revenue, and the resulting unbilled receivables, as reported by C3.ai, Inc. on its financial statements, were in accordance with Generally Accepted Accounting Principles, known as "GAAP."

98. More specifically, the manner in which revenue was being recorded and unbilled receivables reported by C3.ai, Inc. and reflected on its financial statements, were entirely consistent with ASC 606, as follows:

> The core principle of Topic 606 is that an entity should recognize revenue to depict the transfer of goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled
> in exchange for those goods or services.
>
> FASB ASC 606-10-05-3 through 05-4 and 606-10-10-2 through 10-4

99. This is a straightforward accounting matter that had been fully disclosed to the public, Deloitte & Touche LLP, analysts and investors years before. See, e. g., C3.ai, Inc. Form S, Registration Statement

Under The Securities Act Of 1933, at p. 67, entitled "Revenue." Both Kerrisdale and Adrangi had full, complete and easy access to this and other relevant information showing the accuracy of C3.ai, Inc.'s financial reporting and compliance with applicable accounting conventions.

100. Despite that access and knowing full well that C3.ai, Inc. was reporting in complete compliance with the applicable accounting conventions regarding the same, Kerrisdale and Adrangi knowingly and intentionally made false representations of fact as set forth in the April 4, 2023 Letter regarding the same.

101. Moreover, the manner in which C3.ai, Inc. was reporting its subscription revenue and unbilled receivables on its financial statements was consistent with the manner in which other publicly-traded companies operating in the same or similar areas including, but not limited to, Alteryx, Datadog, SAP, Adobe and Salesforce, were recording similar revenue and receivables on their financial statements.

102. The false and deceptive statements reflected in the April 4, 2023 Letter at Paragraph 40 above of the Second Amended Securities Class Action Complaint were made by Kerrisdale and Adrangi for the purpose of unlawfully manipulating the stock markets and committing a fraud on the markets, in order that they might reap the profits of the artificially-created investor panic from the short position that Kerrisdale held in the common shares of C3.ai, Inc.

103. Kerrisdale and Adangi acted in a fashion, as alleged herein, that was designed to negatively affect the price of the shares of C3.ai, Inc. by artificially disrupting and manipulating market conditions that do not reflect genuine investor supply and demand.

104. The conduct of Kerrisdale and Adrangi had its intended effect as it wrongfully drove down the price of the shares of C3.ai, Inc., causing Kerrisdale to profit substantially from its large short position on the stock.

105. Prior to selling their shares of C3.ai, Inc. Plaintiffs were aware of the factual accusations made in the April 4, 2023 Letter and relied upon the same as well as the rapid decline in the market price of the C3.ai, Inc. shares to sell their shares at a loss.

106. A person of ordinary intelligence would have believed the factual accusations made by Kerrisdale and Adrangi in the April 4, 2023 Letter.

107. As a direct and proximate result of the fraudulent act, practice, or course of business, in this instance the April 4, 2023 Letter, Plaintiffs and the Class suffered damages equal to, among other measures, the drop in the share price of the common stock of C3.ai, Inc. and the losses on the sale of the stock they sustained therefrom.

**THIRD CLAIM**
**(Violation of the Exchange Act of 1934,**
**Rule 9(b)(2) & (4); 15 U.S.C. § 78i)**

108. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 73 of the Second Amended Securities Class Action Complaint as Paragraphs 1 through 73 of Count III of the Second Amended Securities Class Action Complaint as though actually set forth herein.

109. Section 9b of the Securities Exchange Act, 15 U.S.C. § 78i, makes it unlawful to manipulate activity on a national securities exchange, and prohibits manipulative conduct of the securities markets, including in connection with short sales of stock.

110. As alleged herein, both Kerrisdale and Adrangi engaged in conduct intended to manipulate unlawfully the share price of C3.ai, Inc. when they authored and disseminated the April 4, 2023 Letter to the public before the market opened on April 4, 2023, through Kerrisdale's public Twitter feed and link to the Kerrisdale website and the April 4, 2023 Letter and later in the same day on Adrangi's appearance on CNBC TV's Closing Bell where he discussed the letter.

111. In the April 4, 2023 Letter, neither Kerrisdale nor Adrangi set forth any evidence of Deloitte & Touche LLP's "rubber stamping" of C3.ai, Inc.'s purported "fraudulent accounting" or actual collusion between the national public accounting, auditing and consulting firm Deloitte & Touche LLP and C3.ai, Inc., nor could they have done so as the allegations were categorically false and Kerrisdale and Adrangi knew that these statements were false when they made them.

112. The statements made in the April 4, 2023 Letter regarding Deloitte & Touche LLP's purported "rubber stamping" of C3.ai, Inc.'s purported "fraudulent accounting," and turning their head the other way, and collusion between C3.ai, Inc. and Deloitte & Touche LLP were false when made and Kerrisdale and Adrangi knew that the allegations of collusion were false at the time they were made publicly.

113.   The statements made in the April 4, 2023 Letter regarding the purported fraudulent nature of the financial statements and reporting of C3.ai, Inc. of, *inter alia*, the subscription revenue and unbilled receivables of C3.ai, Inc. reflected above in Paragraph 40 of the Second Amended Securities Class Action Complaint, were false when made and Kerrisdale and Adangi knew that the allegations of the same were false at the time they were made publicly.

114.   Indeed, the accounting conventions used with respect to subscription revenue and unbilled receivables as reported by C3.ai on its financial statements were in accordance with Generally Accepted Accounting Principles, known as "GAAP."

115.   More specifically, the manner in which revenue and receivables was being recorded by C3.ai, Inc. and reported on its financial statements, was entirely consistent with ASC 606, as follows:

> The core principle of Topic 606 is that an entity should recognize revenue to depict the transfer of goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled
> in exchange for those goods or services.
>
> **FASB ASC 606-10-05-3 through 05-4 and 606-10-10-2 through 10-4**

116.   This is a straightforward accounting matter that had been fully disclosed to the public, Deloitte & Touche LLP, the analysts and investors years prior. See, e. g., C3.ai, Inc. Form S, Registration Statement Under The Securities Act Of 1933, at p. 67, entitled "Revenue." Both Kerrisdale and Adrangi had full, complete and easy access to this and other relevant information showing the accuracy of

C3.ai, Inc.'s financial reporting and compliance with applicable accounting conventions.

117. Despite that access and knowing full well that C3.ai, Inc. was in complete compliance with the applicable "accounting conventions" regarding the same, Kerrisdale and Adrangi knowingly and intentionally made false representations of fact as set forth in the April 4, 2023 Letter regarding the same.

118. Moreover, the manner in which C3.ai, Inc. was reporting its subscription revenue and unbilled receivables and recorded on its financial statements was consistent with the manner in which other publicly-traded companies operating in the same or similar areas including, but not limited to, Alteryx, Datadog, SAP, Adobe and Salesforce, were recording similar revenue and receivables on their financial statements.

119. The false and deceptive statements reflected in the April 4, 2023 Letter and set forth above in Paragraph 40 above of the Second Amended Securities Class Action Complaint, were made by Kerrisdale and Adrangi for the purpose of manipulating the stock markets, committing a fraud on the markets, in order that they might reap the profits of an artificially-created investor panic from the short positions that Kerrisdale held in the common shares of C3.ai, Inc.

120. Kerrisdale and Adrangi acted in a fashion, as alleged herein, that was designed to negatively affect the price of the shares of C3.ai, Inc. by artificially simulating market conditions that do not reflect genuine investor supply and demand.

121. The conduct of Kerrisdale and Adrangi had its intended effect as it wrongfully drove down the price of the shares of C3.ai, Inc., causing Kerrisdale to profit substantially from its large short positions on the stock.

122. Prior to selling their shares of C3.ai, Plaintiffs were aware of the factual accusations made in the April 4, 2023 Letter and relied upon the same as well as the rapid decline in the market price of the C3.ai, Inc. shares to sell their shares at a loss.

123. A person of ordinary intelligence would have believed the factual accusations made by Kerrisdale and Adrangi in the April 4, 2023 Letter.

124. As a direct and proximate result of the fraudulent device, scheme, artifice, practice and course of business and conduct, in this instance the April 4, 2023 Letter, the public tweets, the link to the April 4, 2023 Letter and Adrangi's appearance on CNBC TV where he discussed the letter, Plaintiffs and the Class have suffered damages during the Class Period equal to, among other measures, the drop in the share price of the common stock of C3.ai, Inc. and the losses on the sale of the stock they sustained therefrom.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Elizabeth Coffey and Daniel Korczyk, individually, and on behalf of the Multi-State Class, respectfully request that the Court grant certification of the proposed Multi-State Class, including the designation of Plaintiffs as the named representatives of the Multi-State Class; the appointment of the undersigned as Class Counsel; the designation of any appropriate issue classes and/or subclasses, under the applicable provisions of

FRCP 23; and that the Court enter judgment in Plaintiffs' favor, and in favor of all of those who are similarly situated, and against Defendants, Kerrisdale Capital Management, LLC and Sahm Adrangi, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

(d) An award of statutory and punitive damages, as allowed in amounts to be determined;

(e) An award of restitution or disgorgement of all of the profits of Defendants on the short positions in C3.ai, Inc. that they sold in amounts to be determined; and

(f) Such other and further relief as the Court may deem just and proper.

Dated this 15th day of June 2023.

Respectfully submitted,

Plaintiffs, Elizabeth Coffey and
Daniel Korczyk

By:/s/ Daniel J. Voelker
Their Attorney

Daniel J. Voelker, Esq. (ARDC # 6189578)
**Voelker Litigation Group**
33 N. Dearborn Street, Suite 1000
Chicago, Illinois 60602

312.870.5430
312.505.4841
dvoelker@voelkerlitigationgroup.com