# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ELIZABETH COFFEY and DANIEL
KORCZYK, individually, on behalf of
themselves and others similarly
situated,

        Plaintiffs,

        v.

KERRISDALE CAPITAL
MANAGEMENT and SAHM
ADRANGI,

        Defendants.

No. 23-cv-02175

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiffs Elizabeth Coffey and Daniel Korczyk allegedly sold their stock in the software company C3.ai in reliance on a fraudulent letter written by the Defendants Kerrisdale Capital Management, LLC, a short-selling investment hedge fund, and Sahm Andrangi, Kerrisdale's Chief Investment Officer. Plaintiffs sued Defendants on behalf of a purported class of similarly situated former C3.ai stockholders.[1] Plaintiffs, proceeding now on a second amended complaint, allege violations of the Securities Exchange Act of 1934 (the "Exchange Act") as well as Rule 10b-5(a) and Rule 9(b) thereunder. (Dkt. 19.) Defendants move to dismiss and argue that venue is improper under Rule 12(b)(3) of the Federal Rules of Civil Procedure. In the alternative,

---

[1] The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Section 27 of the Exchange Act, 15 U.S.C § 78aa.

Defendants assert that, because the complaint fails to state a viable claim, dismissal is warranted under Rule 12(b)(6). (Dkt. 21.) For the reasons that follow, the Court grants Defendants' motion under Rule 12(b)(3) and dismisses the complaint on improper venue grounds.[2]

## I.    BACKGROUND

Defendants Kerrisdale Capital Management LLC ("Kerrisdale") and its Chief Investment Officer Sahm Adrangi ("Adrangi") are self-described "activist" short sellers of publicly traded securities. (Dkt. 19 ¶¶ 2–4.) Kerrisdale is incorporated in Delaware and maintains a principal place of business in Florida, and Andrangi is a Florida resident. (*Id.* ¶¶ 15–16.) On April 4, 2023, just before the daily opening of the financial markets, Defendants published an investor letter (the "April Letter") on Kerrisdale's website and on the social media platform formerly called Twitter. (*Id.* ¶¶ 1–4.) In the April Letter, Defendants alleged that C3.ai engaged in deceptive accounting practices, including claims that the company was "hiding costs," "booking fictional revenue," and using "fraudulent accounting conventions" to create misleading financial statements. (*Id.* ¶ 4.) They further accused Deloitte & Touche LLP, C3.ai's auditor, of "rubber stamping" C3.ai's financials and demanded that Deloitte either "come clean" in its audit or resign. (*Id.*) Later that day, Adrangi appeared on CNBC's nationally broadcasted television show "Closing Bell" and

---

[2] Neither party appears to address whether the Court could, under 28 U.S.C. § 1406, transfer this case "to any district or division in which it could have been brought." In view of that silence, the Court will dismiss the case instead of transferring it—particularly since Plaintiffs have not suggested an appropriate alternate venue. To the extent Plaintiffs wish to ask for a transfer, they may file the appropriate motion.

discussed the contents of the letter. (*Id.* ¶ 2.)

Plaintiffs allege that Defendants issued the April Letter to intentionally manipulate the stock price of C3.ai and profit from Kerrisdale's own short position. (Dkt. 19 ¶ 3.) Plaintiffs claim that the letter's timing and dissemination were designed to generate panic among investors, thereby driving down C3.ai's stock price over the course of April 4 through April 6, 2023 (the "Class Period"), causing over a 25% decline in market value and over $1 billion in lost market capitalization. (*Id.* ¶ 5.)

Plaintiffs contend that many shareholders, including themselves, sold shares during this sharp decline based on Defendants' representations, and did so before the financial markets and analysts ultimately concluded that the April Letter was inaccurate. (*Id.* ¶ 6.) Although C3.ai issued public rebuttals to the letter on April 5 and April 6, 2023—including statements by CEO Thomas M. Siebel dismissing the allegations as false—Plaintiffs assert that these denials did not immediately restore investor confidence. (*Id.* ¶¶ 8–9.) According to the Plaintiffs, C3.ai's stock price later rebounded after the company issued additional public statements and disclosed positive developments, including an April 24, 2023 announcement of a software contract with the United States Air Force. (Dkt. 19 ¶¶ 10–11.) Plaintiffs nonetheless contend that they suffered financial harm as a result of the artificial price drop during the Class Period and their subsequent sale of stock in the company. (*Id.* ¶ 6.) The operative complaint asserts violations of Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. § § 78(b) and 78t(a)), Rule 10b-5 promulgated thereunder by the SEC (17

C.F.R. § 240.10b-5) as well as Section 9(b), alleging that Defendants knowingly made false and misleading statements for the purpose of securities fraud. (*Id.* ¶ 12.)

## II.     LEGAL STANDARD

In ruling on a motion to dismiss for improper venue under Rule 12(b)(3), "the court takes all the allegations in the complaint as true unless contradicted by an affidavit and may examine facts outside of the complaint." *Interlease Aviation Invs. II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003); *see also Deb v. SIRVA, Inc.*, 832 F.3d 800, 809–10 (7th Cir. 2016). The plaintiff bears the burden of establishing that venue is proper. *Id.*

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022).

## III.     DISCUSSION

### A.      Motion to Dismiss for Improper Venue Under the Exchange Act

Because Plaintiffs allege violations of the Exchange Act, venue is governed by

15 U.S.C. § 78aa. *Shapiro v. Santa Fe Gaming Corp.*, 1998 WL 102677, at *3 (N.D. Ill. Feb. 27, 1998) (citing *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957)). Venue under the Exchange Act is proper in a district where the defendant (1) is an inhabitant; (2) is found; (3) transacts business; or in a district in which any (4) act or transaction constituting the alleged violation of the Securities Exchange Act occurred. *Id.* at *1. Plaintiffs argue that because Kerrisdale "has investors likely located throughout the United States, including within this Judicial District," Defendants transact business within the Northern District of Illinois. (Dkt. 19 ¶ 21). Because Defendants' statements regarding C3.ai were transmitted via social media and television broadcast, Plaintiffs argue that venue was properly conferred in the Northern District of Illinois after Plaintiff Coffey read the April Letter within the district. (*Id.*)

Plaintiffs' allegation that that Kerrisdale "likely" has investors located within the Northern District of Illinois, however, fails to establish that Kerrisdale transacts business within this District. That Kerrisdale's investors may have lived in the Northern District of Illinois at the time Defendants released their alleged misstatements fails to allege that Defendants conducted any business there. *See Gilson v. Pittsburgh Forgings Co.*, 284 F. Supp. 569, 570–71 (S.D.N.Y. 1968) (trading of a corporation's shares "is not really a part of its 'ordinary business' ").

Plaintiffs cite *Firemen's Annuity & Ben. Fund of Chicago v. Union Planters Nat. Bank*, No. 87-C-106, 1987 WL 4990, at *2 (N.D. Ill. June 1, 1987) to argue that, because Plaintiff Coffey read the April Letter in the Northern District of Illinois,

5

which presumably entails that Defendants conduct business in the district, venue is proper. (Dkt. 27 at 7.) In *Firemen's Annuity*, however, agents of the defendant traveled into the venue at issue "on several occasions to discuss the [defendant's] expertise and services and thereby obtain the [plaintiff's] investment business." *Firemen's Annuity*, 1987 WL 4990, at *2. No allegations or evidence in this case suggest that either Kerrisdale or Adrangi set foot in the Northern District of Illinois or otherwise conducted business within it.

In addition, transmission of allegedly fraudulent information through a nationwide, passive medium does not confer venue wherever the information can be viewed, unless the information specifically and knowingly targeted the forum. *See Miller v. Asensio*, 101 F. Supp. 2d 395, 405–06 (D.S.C. 2000). In *Miller*, stock research analysts published an allegedly fraudulent research report on their company website, recommending that shareholders sell certain stock so that the defendants could profit from their short positions. *Id.* at 397. If "posting information on a website in New York was sufficient to permit venue in any district in which a plaintiff accessed the website and read the posting," *Miller* observed, then "logically venue could lie in every state where a plaintiff resides or has access to a personal computer[.]" *Id.* at 405. Emphasizing that "[s]uch a rule would eviscerate any protection for a defendant in an action under [the Exchange Act]," the court held that venue was improper. *Id.* at 405–06.

*Miller*'s reasoning applies here. Defendants did not knowingly or specifically target the Northern District of Illinois by transmitting alleged misstatements over

the internet or television.[3] Indeed, courts have similarly found that transmitting information through a passive medium is insufficient to confer venue under the Exchange Act wherever the information is merely received by a plaintiff in a given district. *See Shapiro*, 1998 WL at *2 ("[I]t is well-settled that the operation of a toll-free telephone number and a passive, non-advertising website, without more, is insufficient to satisfy jurisdiction or venue [under the Exchange Act]."); *Equidyne Corp. v. Does*, 279 F. Supp. 2d 481, 487 (D. Del. 2003) ("[I]n analyzing internet-based contacts for purposes of venue . . . [,] the Court must be cognizant of the fact that '[a]t one end of the continuum are passive sites that merely post information that is available to anyone with access to the Internet; on the other end are highly interactive sites through which a corporation conducts business over the Internet.' "). Because no facts alleged suggest that Defendants targeted the Northern District of Illinois in posting the April Letter on Twitter or reiterating its points on television, Plaintiffs do not sufficiently allege proper venue.

There is no authority of which the Court is aware holding venue proper under the Exchange Act wherever alleged misstatements are transmitted into a district by a non-issuer or officer over a passive medium, such as a social media post or a television broadcast. Plaintiffs cite *John Nuveen & Co., Inc. v. New York City Housing Development Corp.*, No. 86-C-2583, 1986 WL 5780, at *3 (N.D. Ill. May 9, 1986) to argue that venue is proper where a defendant "causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been

---

[3] Plaintiffs do not allege that they viewed the MSNBC television broadcast or that they relied on it in selling their shares of C3.ai. (*See* Dkt. 19.)

physically present in that district." (Dkt. 27 at 6.) But in holding that venue was proper, *John Nuveen* emphasized that the issuer defendant had knowledge that the information it transmitted about the securities leading to the lawsuit would reach the venue selected by the plaintiffs. Because the issuer defendant had entered into an underwriting agreement that "contemplate[d] a so-called 50 state blue sky survey . . . clearly indicating an intent to market the securities nationally," it was "reasonable to infer that [defendant] knew the representations contained in [the allegedly fraudulent statements] would be taken and/or sent to Illinois, where investors would rely on them". *John Nuveen*, 1986 WL at *3. In contrast, Defendants did not issue the securities central to this lawsuit, and no allegations or evidence indicate that Defendants had knowledge that Plaintiffs or other C3.ai shareholders would review the April Letter in this district. Defendants in this case therefore did not target this venue as did the defendant in *John Nuveen*.

To be sure, Congress intended to confer venue broadly under the Exchange Act, enabling suits that "enforce rights created by the Act to be brought wherever a defendant could be found." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 156 (1976). But no language within § 78aa suggests that Congress intended to confer nationwide venue; a defendant must still be "found" in the district where suit is brought. *See KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 730 (7th Cir. 2013) (venue under the Clayton Act is limited because no language in the statute indicates that Congress intended to confer nationwide venue).

Courts that have found venue to be proper in the district where a press release

8

was received by a plaintiff have uniformly contemplated press releases published by issuers of securities who directed information to shareholders and, in turn, targeted the district where shareholders reviewed the releases. *See, e.g., Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197–98 (E.D. Pa. 1974) (involving alleged misstatements by sellers of a corporation to the buyer); *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 146 (10th Cir. 1967) (securities fraud action brought by a shareholder against the issuer and an officer of the issuer).[4] And although another court has held that "[m]isrepresentations 'occur' not only in the district in which they are made, but also the district or districts in which they are received[,]" that statement, which in any event was dicta, overstates the breadth of what constitutes proper venue under the Exchange Act. *See Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at \*4 (S.D.N.Y. June 8, 2016) (citing securities fraud cases between issuers and their officers and shareholders).

Finding venue proper in a district where a plaintiff reads a defendant's statements transmitted over a passive medium ties venue to the location of the

---

[4] Of the several cases cited by Plaintiffs to argue that Plaintiff Coffey's review of the April 2023 Letter within the Northern District of Illinois conferred venue (Dkt. 27 at 7–8), none of them addressed a situation in which an entity besides the issuer, or an officer of the issuer, transmitted allegedly misleading statements about the securities leading to the case. *S-G Securities, Inc. v. Fuqua Inv. Co.*, 466 F. Supp. 1114, 1119 (D. Mass. 1978) (lawsuit between an issuer of securities and purchasers of those securities); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 106 (10th Cir. 1971) (same); *Carty v. Health-Chem Corp.*, 567 F. Supp. 1, 2 (E.D. Pa. 1982) (same); *In re Triton Ltd. Securities Litigation*, 70 F. Supp. 2d 678, 686–87 (E.D. Tex. 1999) (same); *Kogok v. Fields*, 488 F. Supp. 197, 198 (E.D. Pa. 1978) (same); *Hilgeman v. National Ins. Co. of America*, 547 F.2d 298, 302 (5th Cir. 1977) (same). This distinction matters because, when issuers and officers transmit information about the value of their enterprise or their securities, they target the districts in which their shareholders review that information. No comparable relationship exists between Defendants and Plaintiffs.

9

plaintiff rather than the acts of the defendant. This inverts the guiding principle of venue under the Exchange Act. *See Radzanower*, 426 U.S. at 156 (venue under the Exchange Act "was intended to . . . [enable] suits to be brought wherever a *defendant* could be found") (emphasis added). Although intended to be construed broadly, the venue rule nevertheless limits where a plaintiff can bring a claim arising under the Exchange Act. This Court accordingly declines to diminish, on its own initiative, the protections afforded to defendants by the Exchange Act's venue provision and finds that venue is improper.

### B.      Motion to Dismiss for Failure to State a Claim

Because the Court finds that the Northern District of Illinois is an inappropriate venue to adjudicate Plaintiffs' claims, it does not reach whether those claims must be dismissed under Rule 12(b)(6). *See, e.g., Lores v. SailPoint Technologies, Inc.*, 2019 1382080, at *6 n.6 (N.D. Ill. Mar. 27, 2019) ("Because the Court grants Defendant's primary request to either dismiss or transfer the case under Rule 12(b)(3), it does not reach whether [the plaintiff's claims] must be dismissed for failure to state a claim under Rule 12(b)(6)."). Whether Plaintiffs have sufficiently pled a case for securities fraud must be decided in a proper venue should Plaintiffs refile their claims elsewhere.

### IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure (Dkt. 19) is granted.

SO ORDERED in 23-cv-02175.

Date: March 31, 2026

_____
JOHN F. KNESS
United States District Judge

11